Arthur S. Colyer, Special J.,
delivered the opinion of the Court.
The original bill in this case, was filed by Moses Ridley, against the widow and heirs of Henry Ridley, for an account. The facts in brief, as shown by the pleadings and proof, are, that Henry Ridley, who was the owner of a considerable estate, and much in debt, died in July, 1835, suddenly, of cholera, after having, upon his death-bed, requested his brother, Moses Ridley, in whom he had the utmost confidence, to take the management of his estate. Moses Ridley, in November of the same year, qualified as his administrator, in Rutherford County, Tennessee, and shortly afterwards, in- Hinds County, Mississippi; but for some informality by the Probate Court in taking the bond in Mississippi, the said Moses Ridley was removed by the same Court, at the instance of one • of the defendants, after thirteen years of faithful service, for the benefit of the estate of his deceased brother.
The estate of Henry Ridley, in Mississippi, at the time of his death, consisted of a plantation and slaves, *325 most of which had been purchased oa a credit by him just before his death.
Moses Ridley coutinued the cotton planting in Mississippi, (until he was removed, about 1st of June, 1848,) greatly to the interest of the widow and heirs of his deceased brother; the estate haying been much improved in that time.
This case was before this Court three years ago, by appeal from the decree of the Chancellor, ordering an account; and at which time, the actings and doings of said Moses Ridley, in carrying on the Mississippi farm, were carefully examined and fully approved, and the cause remanded for an account; the basis having been fully and definitely settled.
Upon taking the account, by the Master’s report, it appears that the estate of H. Ridley was indebted to the estate of Moses Ridley, (the latter having died shortly after filing the bill,) forty-eight thousand, itoo hundred and eighty-six dollars and fifteen cents. This report was excepted to by both parties, and upon the hearing, a decree was pronounced by the Chancellor for thirty-eight thousand, two hundred and three dollars and eighty-one cents. Erom this decree both parties appealed.
All the points arising upon the exceptions, have been examined by the Court, and though requiring much patient labor, (the record being one of eight hundred pages,) yet we have had but little difficulty, except upon a single exception. The eighth exception of defendants, is in these words: “Because the Clerk <& Master allows Moses Ridley a credit of five thousand dollars, paid to Thomas M. Warren, when the proof shows that no such debt was owing by the estate of Henry Ridley, *326 nor was that amount ever paid by Moses Ridley, out of his estate.”
This exception was allowed by the Chancellor, and the five thousand dollars and the interest thereon, were stricken out of the report, by the decree. We have carefully examined all the proof upon this item, and find the question raised by the exception, by no means free from difficulty.
The note, upon which this payment is claimed as a credit, was made by Thomas S. Anthony, payable to Warren, for $9,000, dated 5th June, 1834, and due 1st March, 1835; and on which $4,433.76 had been paid, as shown by an endorsement on the back of the note, in cotton, on the 25th March, 1835.
The balance of the note is the subject of the exception. Whether Moses Ridley paid it, is the question. This note, with two others for ten thousand dollars each, of the same date, and due respectively, 1st of March, 1836, and 1st of March, 1837, was given for a tract of land and some slaves in Mississippi, bought by Anthony, of Warren, on the day of the date of said note. On the 29th of September, 1834, Henry Ridley and Anthony, entered into partnership in cotton planting in Mississipi. Articles were drawn and signed, by which Ridley was to be joint owner with Anthony, of the land and negroes bought of Warren, and he was to pay one-half the purchase money: the articles specifying the three notes which amounted to $29,000. On the 21st of May, 1835, Ridley bought the remaining moiety of the land and slaves from Anthony, agreeing to give for the same, and other property added, *327 $42,000. This agreement was reduced to writing, and sets forth the mode and manner of payment.
The argument on behalf of complainant, is, that a balance, amounting to about five thousand dollars of the 9,000 dollar note, remained unpaid at the death of Henry Ridley, and that Moses Ridley paid the same in 1835, and that he should have a credit therefor, because by the terms of the contract of 29th September, Henry Ridley was to pay one-half this debt; and especially, because by the terms of the sale from Warren to Anthony, Warren had a lien upon the property, land and slaves, for the whole $29,000. In other words, that the estate which came into the hands of Moses Ridley, as Adm’r., was encumbered with a mortgage, to •secure the $9,000. We see from the record, that the lien existed, and therefore, if Moses Ridley paid the debt, it was a valid payment, for which he should have a credit. But the question is, did Moses Ridley pay the balance of the $9,000.
Thomas M. Warren distinctly proves that Moses Rid-ley paid him that balance in Nashville, in 1835, through H. R. W. Hill; and Moses Ridley, as his administrator, .files the note; and there is proof that Moses Ridley was able to pay the debt, though he might have received nothing from Henry Ridley’s estate. For aught that appears in this record, Thomas M. Warren is a reputable witness, and we have investigated this case giving him full credit. The fact that Moses Ridley had the means to pay, amounts to little or nothing, as the only witness relied on to prove the payment, says it was paid through H. R. W. Hill; and the additional fact that complainant filed the note, is neutralized by *328 the fact that, as administrator, Moses Ridley doubtless received all the papers of Henry Ridley. This leaves the positive testimony of Thomas M. Warren, upon the one side, and the facts and circumstances, on the other, hereinafter referred to, to be weighed.
The note in question fell due March 1st, 1835. Henry Ridley died July 22, 1835, and Moses Ridley was appointed administrator on his estate, November 1st, of the same year; so that, if Moses Ridley paid the balance of said note in 1835, it was after that time.
It is true, that Henry Ridley, in his lifetime, .and Moses Ridley, as his administrator after his death, raised large amounts of money, under an arrangement with H. R. W. Hill, by drawing bills on, and having them accepted by, N. & J. Dick & Co., of New Orleans, of which firm Hill was a member. Hill's deposition was taken, but he proves no such payment for Moses Rid-ley ; and the account current of N. & J. Dick & Co., which is exhibited, and proven to be correct, by Hill, contains no item corresponding with the matter of the eighth exception.
But Hill does prove, and the account current of N. & J. Dick & Co., shows, that on the 15th day of May,. 1835, Henry Ridley drew two bills on N. & J. Dick & Co., amounting to $11,706.25, and on the same day he borrowed of them $700. This money was doubtless, in part, applied to the payment of a debt of $7,843.91, due front Anthony to N. & J. Dick & Co., and which Henry Ridley, by his agreement witb Anthony, had assumed. This left of the proceeds of said bills about $3,445. This was not enough to pay off the balance of the $9,000 note, but it is shown in the proof that he *329 had good credit, and a few days thereafter executed his two notes, amounting to about $1,600, to M. G-. Reeves, which were, in all probability, given for borrowed money. The argument that a part of the proceeds of said two bills was applied to the payment of the note in controversy, is much strengthened by the memorandum thereon, showing that the interest on the balance was computed up to that day, (May 15, 1835.)
By the two ten thousand dollar notes, as well as the notes to Reeves, and many other vouchers in this record, it is shown that Moses Ridley, in paying notes, as well as accounts, was usually particular to take receipts on the back, showing that he, as administrator, paid the same, but there is no such receipt on the back of the $9,000 note.
Again: On the 21st of May, 1835, when Henry Rid-ley bought from Anthony his remaining moiety of the land and slaves in Mississippi, the former gave to the latter, a bond in the sum of $40,000, conditioned to do certain things, and, among the rest, is this explicit and significant provision: “Now, these presents witnesseth, that the above bounden Henry Ridley is to take up, pay, discharge, and hand over to said Thomas, two bonds, obligations, or promissory notes, of ten thousand dollars each, executed by the said Thomas S. Anthony to Thomas M. Warren, late of Mississippi, and now of Williamson county, Tennessee. One of which notes, or writings obligatory, falls due March 1st, 1836; the other to become due and payable March 1st, 1837.”
When we remember that the three notes, amounting to $29,000, were given for the identical property which Henry Ridley was then purchasing; that Warren had a *330 lien thereon for the payment of the whole; that Henry Eidley, by his agreement of the 29th of September, 1834, was bound to pay one-half the $9,000 note, as well as one-half of the other two, and that the $9,000 note was the only one of the three which was due at the time of the trade of the 21st of May, 1835, we cannot concur 'with the counsel for the complainant, that the $9,000 note was forgotten, or omitted, by mistake.
We think the circumstantial proof thus presented on behalf of defendant, and which lose nothing by the lapse of time, preponderate over the recollection of one credible witness, after the lapse of seventeen years — Warren’s testimony having been taken in 1832.
But, in this case, the burthen of proof is on the complainant to charge the estate of Henry Eidley, by proving the payment. This he must do, not merely, (where there is a conflict in the proof,) by having a mere preponderance in his favor, but the preponderance must be sucli as to satisfy the mind. It lies with him to satisfy the mind and conscience of the Court that he is entitled to the money, before any decree can be pronounced against the defendant for the same: 1 Greenleaf, 4, sec. 2.
The only remaining exceptions much pressed by the counsel, are the first, ninth, and eighteenth exceptions, on behalf of defendants. The first exception is, because the Master has only charged complainant with the proceeds of 1,811 bales of cotton, when he should be charged with the proceeds of not less than 2,019 bales. We think, from the proof, that the defendants have no cause for exception upon this ground. It is not clear, from the proof, that 2,019 bales were raised on the Mississippi farm in the thirteen years.-
*331 But complainant has satisfactorily accounted for as much cotton, as is actually shown to be the defect; and besides, waives all his exceptions, mainly in reference to expenses in carrying on the Mississippi farm, several of which it would be difficult for us to disallow upon the proof, on condition that the first exception of defendants is not sustained.
The credits, in our estimation, allowed the complainant for expenses in carrying on the Mississippi farm, are exceedingly small, and which is reasonably accounted for, by supposing that some cotton was used in defraying expenses which has not been charged to complainant. But that there was cotton not fully accounted for by the proof, does not sufficiently appear to be made the subject of a charge in the account.
The ninth exception is: “because the Clerk & Master allows Moses Ridley a credit of $14,154.15, paid by N. & J. Dick & Co., to Lee Maddox & Co., in March, 1836, when said debt was the partnership debt of Rid-ley & Anthony, and which Henry Ridley was not, by the contract, bound to pay.”
There seems to us to be an inconsistency in the exception. If it was the partnership debt of Ridley & Anthony, as the exception states it was, then Ridley & Anthony were jointly and severally bound to pay it.
The case made by the exception is not a charge of negligence, for not making Anthony pay his part. But by the proof, it is a meritorious credit, and should be allowed the complainant.
It is not denied that Ridley & Anthony owed this money ; and the payment of it by Moses Ridley is not controverted; but it is said that the contract of the *332 21st May, 1835, only bound H. Ridley to pay $5,656.09, which is true, but it bound him to pay that much for Anthony; the balance was, doubtless, H. Ridley’s part of the whole debt upon settlement, and therefore, not mentioned in the writing.
Exceptions 13, 14, 15 and 16, on behalf of defendants, are bad, because they do not point out any particular error in the report, but assume that “ moneys have been twice credited,” and “that the account is, in many particulars, erroneous,” and that the aggregate result of debts and credits, is erroneous.
These exceptions are too general. Exceptions partake of the nature of special demurrers; and if a report is erroneous, the party excepting, must put his finger on the error: Wilkes & Wife vs. Rogers et als., 6 John. R., 566.
Much labor has been bestowed on the 18th exception by counsel, to show that Moses Ridley had large sums of money in his hands at different times, while there were debts outstanding against the estate, drawing interest, and which he afterwards paid, getting a credit here for the interest which thus accrued, while he had the money to pay them.
No specific case is pointed out and shown, and the exception makes no such case. The exception is, “because the Clerk allows interest on the balance from 1848, when no interest should be allowed.”
We think the defendants have no cause of complaint about interest, when the Clerk has only allowed the complainant interest from 1848, on balance due him, most of which is money paid by him between 1835 and 1848, at different periods. We cannot believe that *333 defendants are injured by this mode of computing interest, when the record shows a large balance due complainant — most, or all of which, was due him before 1848.
The other exceptions have been examined, but upon the whole case, we see no reason to change the decree of the Chancellor, and affirm it in all things.